UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| JAMES CLAY WALLER, II, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 1:18-cv-00158-AGF |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of Petitioner James Clay Waller, II, to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  ECF No. 25. On October 5, 2017, Waller pled guilty to one count of interstate travel to commit domestic violence, in violation of 18 U.S.C. § 2261(a)(1), in connection with the murder of his wife in 2011.  On December 19, 2017, pursuant to a binding plea agreement, the Court sentenced Waller to 420 months in prison, to run concurrent to his sentence on a parallel state conviction in Cape Girardeau County.[1]  On June 25, 2018, Waller filed a pro se motion under § 2255 asserting multiple claims of ineffective assistance of counsel, prosecutorial misconduct, attorney conflict of interest, and violations of due process. ECF No. 1.   On July 25, 2018, the Court granted Waller's motion for appointment of counsel and appointed pro bono counsel for Waller.  ECF No. 13.  On January 22, 2019, Waller filed the present amended motion through counsel, asserting one claim of

---

[1] *State of Missouri v. Waller*, Case No. 12CG-CR00686-01 (32nd Circuit of Missouri).

prosecutorial misconduct. ECF No. 25. The United States filed a response in opposition (ECF No. 30), and no reply was filed by Waller. As the record before the Court conclusively demonstrates that Waller is not entitled to relief, the Court will deny Waller's motion without a hearing.

## BACKGROUND

**Events Preceding the Indictment**

In October 2011, Waller pled guilty to a federal charge of interstate transmission of a threat to injure, in violation of 18 U.S.C. 875(c), for a website post about the search for his missing wife.[2] On January 3, 2012, he was sentenced to 60 months in prison on that charge. While serving that federal sentence, on April 23, 2012, Waller was charged in state court with second-degree murder for the murder of his wife. He pled guilty and on June 6, 2013 was sentenced to 20 years in prison, to run concurrent to any other sentences he was then serving.

In September 2014, while still serving his 2012 federal sentence in a federal prison in California, Waller phoned the Bureau of Prisons Special Investigation Services and left a message informing the Bureau of a planned assault on an inmate at that facility. The message was not received in time to prevent the assault, which occurred within a few hours after the call, according to Waller. ECF No. 25 at 2. On October 2, 2014, Waller was interviewed by FBI agents regarding the assault. Waller shared his knowledge of the

---

[2] *USA v. Waller*, Case No. 1:11-CR-00105-SNLJ-1.

2

circumstances and individuals involved in the assault, memorialized on FBI Form 302. ECF No. 30-1.[3]  The inmate-defendant in that assault case was charged by indictment in the Eastern District of California on January 29, 2015.[4]  He pled guilty on April 15, 2015 and was sentenced on August 12, 2015 to a prison term of 38 months.

On December 4, 2015, Waller was released from federal custody on the 2012 sentence and transferred to the custody of the Missouri Department of Corrections to serve the balance of his 20-year state sentence for the murder of his wife.

**Criminal Proceedings**

The underlying federal charge in the present case was filed on May 19, 2016, more than 19 months after the California interview.  Waller was charged with one count of interstate travel to commit domestic violence, in violation of 18 U.S.C. § 2261(a)(1), which carried a maximum penalty of life imprisonment.  On October 5, 2017, Waller entered into a binding plea under Rule 11(c)(1)(C), Fed. R. Crim. P.  Pursuant to the terms of the Guilty Plea Agreement, Waller agreed to plead guilty to the charge, and the parties agreed to a binding sentence of 420 months (i.e., 35 years), to run concurrent to his state sentence.  Case No. 1:16-CR-00058-AGF, ECF No. 80 at 1-2.[5]  The plea

---

[3] The Government has filed the Form 302 as an exhibit to its response, though without any argument with respect to admissibility.  Waller does not object to the document and insists that the information he provided to the California investigators constituted substantial assistance.  Nonetheless, the Court need not and does not rely on this document to examine Waller's claim.

[4] The Court takes judicial notice of the California inmate assault case.  *United States v. Jordon Harrington*, 2:15-CR-00027 (E.D. Cal.).

[5] Refences to filings in the underlying criminal case will be designated as "Crim. ECF No.".

3

agreement contained a waiver of appeal whereby the parties agreed to waive all rights to appeal all non-sentencing issues and, if the Court accepted the plea and sentenced Waller to 420 months, all rights to appeal all sentencing issues as well. *Id.* at 6. Further, if the Court accepted the plea and sentence, Waller agreed to waive his rights to post-conviction relief except on claims of ineffective assistance of counsel and prosecutorial misconduct. *Id.* Concurrent with the plea agreement, the Government filed a Sealed Plea Supplement stating that Waller "had not offered substantial assistance to the Government and the Government will not be filing a motion for downward departure on defendant's behalf absent additional cooperation." Crim. ECF No. 81.[6]

In the plea agreement, Waller stipulated to the following facts.

> The defendant, James Clay Waller, II, and Jacque Sue Waller were husband and wife. They separated in March of 2011. Jacque Sue Waller had arranged for she [sic] and the defendant to meet with a divorce attorney in Cape Girardeau, Missouri at 3:00 p.m. on June 1, 2011 to discuss the terms of the dissolution of their marriage. The defendant had told Jacque Sue Waller on numerous occasions that if she divorced him, she would be signing her death warrant.
>
> On May 31, 2011, the day before the parties were to meet with Jacque's attorney, the defendant dug a grave on the Illinois side of the Mississippi River near Devil's Island in which to bury his wife. He then spent the night with his girlfriend in Illinois. The next day, June 1, 2011, the defendant traveled from Illinois to Cape Girardeau to attend the meeting at the lawyer's office. When the defendant traveled in interstate commerce from Illinois to Missouri that day, he did so with the intent to kill his spouse, Jacque Sue Waller.
>
> Following their meeting with the divorce attorney, Jacque Sue Waller went to the defendant's residence located in Jackson, Missouri.

---

[6] The plea and sentencing supplements regarding cooperation and the transcripts of the Court's discussion with defendants regarding the supplements are filed under seal but will be referenced herein to the extent the parties have discussed Waller's cooperation and the plea and sentencing supplements in their public filings.

> Inside the residence, the defendant strangled and beat Jacque Sue Waller to death. The defendant then transported her body across the Mississippi River by boat and buried her in the grave he had dug the day before.

Crim. ECF No. 80 at 3-4.

At the plea hearing, Waller confirmed under oath that he was satisfied with his attorney, who completely and satisfactorily explored all issues in the case, and that there was nothing he wanted his attorney to do that he had not done. Crim. ECF No. 105 at 10. He also stated that neither defense counsel nor the Government made any representations not reflected in the plea agreement with respect to sentencing. The facts recited in the plea agreement were reviewed in detail, and Waller agreed under oath that the statements contained in the plea agreement were true. *Id.* at 14, 22-25. The Court also reviewed in detail the binding nature of the plea agreement, and Waller confirmed his understanding that, if the agreement was accepted by the Court, then the Court would be bound to impose a 420-month sentence. He further acknowledged his understanding that, under the agreement, neither party could request a sentence above or below the 420-month sentence under the guidelines, 18 U.S.C. § 3553, "or any other provision of law." *Id*. at 17-18, 27. Waller also confirmed his understanding that he was waiving his right to appeal and also his right to post-conviction relief except for claims of prosecutorial misconduct or ineffective assistance of counsel. The Court also explored with Waller the language of the sealed supplement regarding cooperation. Specifically, the Court advised him, "the statement that I have received here says that you have not offered substantial assistance to the Government, and the Government will not be filing a motion for a

5

downward departure on your behalf unless, of course, a situation were to change and you were to offer such cooperation later." Waller confirmed that he understood, and that he did not have any questions about the statement. Crim. ECF No. 106 at 2.[7] The Court found that Waller's plea was knowing, intelligent, and voluntary and advised him that, if the Court were unwilling to accept the binding plea, then the parties would be so advised prior to sentencing. Crim. ECF No. 105 at 45.

On October 30, 2017, Waller filed a pro se motion seeking to compel the Government to file a Rule 35(b) motion for a downward departure recognizing his assistance in the California investigation. The Court denied the motion without prejudice, instructing that any requests in the case should be filed by counsel if appropriate. Crim. ECF No. 84. No such motion was filed. On November 30, 2017, the Government filed a sentencing statement again confirming that it would not move for a downward departure because Waller had not provided substantial assistance. Crim. ECF No. 88.

At the sentencing hearing on December 19, 2017, the issue of Waller's expectation of a substantial assistance departure was discussed at length.[8]

    Waller:    I provided cooperation.
\*\*\*

---

[7] At the time Waller confirmed his understanding of no substantial assistance or downward departure, he was aware that he had offered some cooperation previously. Earlier in the hearing, when asked about counsel, Waller misunderstood the Court's question and volunteered, "I've cooperated from two or three years, four years ago. I've been cooperating the whole time." Crim. ECF No. 105 at 10.

[8] Minor, non-substantive edits and corrections of typographical errors have been made for readability.

6

   Counsel:  Mr. Waller indeed did sit down with a United States Attorney's Office in another jurisdiction for purposes of providing information relating to an unrelated crime. Mr. Waller's position was that, in return for that particular offer, he was to receive some sort of cooperation. However, he also understands that, with respect to this particular case, there is no offer of cooperation such that he receives a substantial assistance departure motion by the Government. …

   \*\*\*

   AUSA Ferrell:  … We believe factually and legally there's no basis for the motion. Having talked with the U.S. Attorneys and investigators involved in that matter out there, it's my understanding today that there is no motion before the Court asking to go outside the plea agreement, that the defense is here today to request a sentence of 420 months be imposed and is not requesting a downward departure.

   \*\*\*

   Court [to Waller]:  … And you understand that the decision whether to file a motion for substantial assistance and whether to accept your substantial assistance in connection with the charge that is pending in this court is solely up to the prosecutors. Do you understand that, sir?

   Waller:  Uh-huh.

   Court:  And you understand that I can't make them agree to accept your cooperation in connection with the charge that is pending against you in this court. Do you understand that?

   Waller:  Uh-huh.

   Court:  And do you understand that whatever discussions you had with the prosecutors in connection with this current charge was taken into account by the prosecutors when they entered into this plea agreement with you. Do you understand that?

   Waller:  Sure. Yeah.

   Court:  Alright. So, you understand that this current plea agreement does not provide for you to be receiving any benefit other than what is reflected in this binding plea agreement in connection with any cooperation that you provided to the United States Attorney's Office for the Eastern District of Missouri. Do you understand that?

   Waller:  Okay. Yes.

   \*\*\*

   Court:  Now, I am aware, sir, that you filed this pro se motion for a Rule 35 motion in connection with some cooperation that you believe you provided in another district, is that correct, sir?

    Waller:       Yes. On both. … The guy out there put me in harm's way, and they told me if I would … if I was to do the things I did, that they would help me.

    Court:       And you understand, sir, that those matters are not before me now.

    Waller:       I understand that.

\*\*\*

    Court:       You understand that was provided to another office, and that that procedure of a Rule 35 motion is one that can apply to a sentence after it has been imposed. … Do you understand that, Mr. Waller?[9]

    Waller:       Yes, ma'am.

\*\*\*

    Court:       … Mr. Ferrell, do you have any understanding one way or another whether the possibility of a Rule 35 motion from that district is still an open question?

    AUSA Ferrell:       It is not, Your Honor.  I appreciate the opportunity to clarify the record.  I spoke directly with the Assistant United States Attorney handling that investigation as well as the investigating officers.  Mr. Waller provided information he had about an assault which occurred there.  This assault occurred on video camera in front of correctional officers, and the defendant in that case admitted his crime.  So, according to… well, my evaluation of the facts, and evaluation of the facts and the facts provided by the Assistant United States Attorney, Mr. Waller's providing the statements in no way rises to the level of substantial assistance with regard to filing a motion for downward departure.

\*\*\*

    Waller:       Mr. Ferrell is apparently not aware of all that took place, or he just doesn't want to help me for what happened, because I was put in some danger, ongoing danger, because of the gang members involved. …

\*\*\*

    Counsel:       With respect to any safety concerns Mr. Waller has, I've already notified the U.S. Marshals … Mr. Waller has also been made aware that his own pro se

---

[9] Rule 35 provides that, upon the government's motion within one year after sentencing, the court may reduce a defendant's sentence if he provided substantial assistance in investigating or prosecuting another person.  Beyond that one-year period, the court may reduce a sentence if the defendant's substantial assistance involved (1) information that was not known to the defendant until more than a year after sentencing, (2) information that was known within a year but did not become useful to the government until later, or (3) information the usefulness of which the defendant could not reasonably have anticipated until more than a year after sentencing, and which the defendant promptly provided to the government upon realizing the usefulness of it.

8

motion to compel a 35(b) motion in an unrelated matter was (a) inapplicable in this particular case and (b) premature in light of the fact that he had not been sentenced yet. So, with respect to both aspects: (a) cooperation in this case and (b) cooperation in the California matter, Mr. Waller has been made aware that the answer is simply no at this juncture.

Crim. ECF No. 107 at 8-15.

At the conclusion of the hearing, the Court accepted the parties' agreed sentence of 420 months and ordered that it run concurrent to Waller's state court sentence, consistent with the terms of the plea agreement, followed by five years of supervised release.

**Motion to Vacate**

As his sole basis for habeas relief under § 2255, Waller asserts that AUSA Ferrell "acted in bad faith and knowingly violated Waller's due process rights by suppressing exculpatory material evidence" during sentencing. Contrary to this wording, Waller does not allege a *Brady* violation or claim actual innocence. Rather, he asserts that AUSA Ferrell committed prosecutorial misconduct by misrepresenting and omitting material facts at sentencing to justify the Government's decision not to move for a downward departure. Specifically, Waller claims that the California prison assault conviction could not have been obtained without his assistance because the video evidence was insufficient, and federal agents in California assured him that they would recommend a Rule 35(b) motion in this case, resulting in a reduction of 13-17 years.

In response, the Government submits that Waller's claim is both procedurally defaulted and substantively devoid of merit.

9

**DISCUSSION**

Pursuant to 28 U.S.C. § 2255, a federal prisoner may seek relief from a sentence imposed against him on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." § 2255(b).

Claims brought under § 2255 may also be limited by procedural default. A movant cannot raise a non-constitutional or non-jurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not. *Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994). Even constitutional or jurisdictional claims that could have been but were not raised on direct appeal cannot be raised in a § 2255 motion unless the movant can establish (1) cause for the default and actual prejudice or (2) actual innocence. *United States v. Moss*, 252 F.3d 993, 1001(8th Cir. 2001) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

**Procedural Default**

As a preliminary matter, the Government asserts that Waller procedurally defaulted his claim of prosecutorial misconduct in sentencing by not raising it on direct appeal. The Government notes that Waller has not claimed actual innocence and has not offered any allegations that would support finding of cause for the default and actual prejudice. *See Turner v. United States*, No. 4:10CV01350 ERW, 2011 WL 2580104, at *2 (E.D. Mo. June 28, 2011) (finding procedural default where movant failed to assert claim of prosecutorial misconduct on direct appeal).

Under the plea agreement, however, Waller waived "all rights to appeal all sentencing issues" but maintained his right to challenge his sentence in post-conviction proceedings on the limited grounds of prosecutorial misconduct, as he does here, or ineffective assistance of counsel. Crim. ECF No. 80 at 6. Neither party has cited any case law addressing the effect of these provisions on the question of procedural default for failure to file a direct appeal. The Eighth Circuit has refused to review sentencing challenges on direct appeal where the issue is within the scope of a knowing and voluntary plea and waiver. *See United States v. Andis*, 333 F.3d 886, 891-892 (instructing that a waiver of the right to appeal a sentence should be enforced absent a miscarriage of justice, such as a sentence outside the statutory range). Waller does not challenge the validity of his appeal waiver. Absent briefing on this issue and noting that the plea agreement specifically waived the right to appeal but preserved the right to assert post-conviction claims of prosecutorial misconduct, out of caution the Court will assume

11

that the procedural bar may not apply here. But Waller is not entitled to relief on the merits in any event.

### Prosecutorial Misconduct

Prosecutorial misconduct does not merit federal habeas relief unless the misconduct infected the trial with enough unfairness to render a petitioner's conviction a denial of due process. *Stringer v. Hedgepeth*, 280 F.3d 826, 829 (8th Cir. 2002). To constitute misconduct, a prosecutor's remarks must have been improper and must have prejudicially affected the defendant's substantial rights. *Graves v. Ault*, 614 F.3d 501, 507 (8th Cir. 2010).

The Court presumes that a prosecutor has properly discharged his duties absent clear evidence to the contrary. *United States v. Smith*, 574 F.3d 521, 525 (8th Cir. 2009). The government has broad discretion whether to file a substantial assistance motion unless a defendant makes a threshold showing that the government's refusal to do so is irrational, in bad faith, or based on an unconstitutional motive. *United States v. Davis*, 397 F.3d 672, 676 (8th Cir. 2005). This threshold showing requires more than just evidence of substantial assistance and general allegations of improper motive. *Smith*, 574 F.3d at 525. Rather, a defendant must present evidence that the decision was prompted by an unconstitutional motive (e.g., based on his race or religion) or not rationally related to any legitimate government interest. *Id.*

As the sole basis for his habeas petition, Waller asserts that AUSA Ferrell deliberately minimized and misrepresented to the Court at sentencing the value of

12

Waller's assistance in the California case. But Waller's attempt to litigate here the value of his assistance in California is unavailing. At sentencing, AUSA Ferrell explained that, based on both his own evaluation and the information and assessment provided by the AUSA and investigating officers in California, Waller's cooperation did not rise to the level of substantial assistance, particularly given that the assault occurred on video and in the presence of corrections officers, and the defendant there admitted his guilt.[10] Defense counsel stated on the record that Waller understood this and had been advised that a Rule 35 motion was inapplicable and premature, as Waller had not yet been sentenced in this case. No further motions were filed in the criminal matter, and defense counsel assured the Court that he would advise Waller as to any recourse in California. Crim. ECF No. 107 at 15-16.

Moreover, even accepting Waller's description of his cooperation, the government's decision whether to move for a downward departure is still entirely discretionary absent some improper motive. *Smith*, 574 F.3d at 525. And even if California agents promised Waller some benefit not reflected in the record, nothing beyond Waller's bare accusations suggests that AUSA Ferrell knew of such a promise

---

[10] Attached as exhibits to its response, the Government has filed email correspondence between AUSA Ferrell and California AUSA Christiaan Highsmith discussing their assessment of Waller's cooperation and another email from AUSA Ferrell to defense counsel summarizing the same. Although Waller did not object to these exhibits, the Court notes that the emails are not accompanied by an affidavit or otherwise authenticated, and they are hearsay. The Court need not and does not rely on these emails to resolve the issue presented here. As discussed herein, Rule 35 simply does not apply to the chronology of this case, and, even if it did, the record contains no evidentiary basis for this Court to question the Government's broad discretion whether to move for downward departure. *Smith*, 574 F.3d at 525.

and concealed it. Waller's own characterization at the hearing was that AUSA Ferrell either was "not aware of all that took place, or he just "didn't want to help … ." Waller does not advance, much less support with evidence, any allegation of unconstitutional motive or absence of legitimate government interest. "[S]o long as the government is exercising its statutory power … and its action is not based on an unconstitutional motive, its refusal to file the motion is unreviewable." *Id*. at 526. Put simply, the Court finds no basis to question the Government's discretion here. *See Turner v. United States*, 1:14-CV-00077-JAR, 2017 WL 4342081, at *7 (E.D. Mo. Sept. 28, 2017) (no prosecutorial misconduct where government declined to file a Rule 35 motion and record did not support movant's claim of any promise to do so); *Medley v. United States*, 1:09CV15 HEA, 2010 WL 1528331, at *5 (E.D. Mo. Apr. 16, 2010) (no misconduct where record refuted movant's claim that the government promised a downward departure); *Phillips v. United States*, 4:10CV01036 ERW, 2011 WL 2532409, at *5 (E.D. Mo. June 24, 2011) (no misconduct for pursuit of sentencing enhancements where government only agreed not to prosecute further); *Ortiz v. United States*, 4:07CV1821 HEA, 2008 WL 1913958, at *3 (E.D. Mo. Apr. 28, 2008) (no misconduct for assessing criminal history points after plea).

In addition, Waller's claim with respect to the alleged promise of a reduction in sentence is not plausible and is refuted by the record. In his § 2255 motion, Waller states that the California agents represented to him that, once the perpetrators of the inmate assault were convicted, a Rule 35 motion would be recommended by the California

14

AUSA and "filed with the Missouri governing authorities." ECF No. 25 at 2. Waller further states that the federal parties explained to Waller that, due to the seriousness of the crime and the ongoing exposure to prison dangers including retaliation, "Waller could expect a 13 to 17 year reduction in his sentence, possibly more, depending on the judge." *Id.* But Waller's 2014 interview with California agents took place more than 19 months before he was even indicted in the present case. There is nothing in the record to suggest that anyone was aware of the prospect of the charge in this case at that time, much less a sentence of 420 months. Indeed, in his pro se § 2255 filings, Waller contends just the opposite.[11] To the extent anyone was suggesting a reduction in sentence under Rule 35, it simply could not have applied to this 2017 federal charge.

More importantly, Waller entered into the binding plea agreement in this case more than three years after his California interview and two years after the defendant in the inmate assault case was sentenced. Waller accepted the benefits of that binding plea agreement.[12] At his plea hearing, Waller unequivocally confirmed under oath his understanding that no substantial assistance had been provided and no motion for a downward departure would be filed on his behalf. Crim. ECF Nos. 81 and 106 at 2. He also confirmed his satisfaction with counsel's actions on his behalf and repeatedly

---

[11] In his pro se § 2255 filings, Waller contends that he was indicted in this district only after AUSA Ferrell discovered Waller's murder-tell-all book in 2016, and that AUSA Ferrell brought the charge in this district solely to punish Waller for exercising his First Amendment rights. ECF No. 1-2 at 2; ECF No. 17 at 2.

[12] The guideline range was 360 months to life. Waller's sentence of 420 months, though significant, did confer a benefit on Waller insofar as he otherwise faced exposure to life in prison.

15

acknowledged his understanding that, if the plea was accepted by the Court, then he would receive a sentence of 420 months, and that neither party would request a sentence above or below 420 months. The notion that Waller cooperated in California only out of reliance on a promise of significant leniency in Missouri, in a federal case that did not exist at the time, and in which sentencing did not occur until three years later, is illogical and unreasonable.[13] It is also refuted by the terms of his binding plea agreement and his representations under oath at the time of his plea. And again, even if Waller did cooperate in subjective anticipation of some future benefit, there is no basis in the present record to question the Government's broad discretion in this case, and Waller has not met his burden to show that AUSA Ferrell was aware of any such facts or acted in bad faith or irrationally.

Finally, to the extent Waller conflates or combines Rule 35 with occasional references to § 5K1.1, the Court understands from the sentencing transcript and the arguments in Waller's § 2255 motion that Waller centrally challenges the Government's refusal to file a motion under Rule 35, which motion is not available on these facts, but the result would be the same under U.S.S.G. § 5K.1.1. A district court may review the government's refusal to file a 5K motion only if such refusal was prompted by an unconstitutional motive, such as the defendant's race or religion, or if it was not rationally related to a legitimate government interest. *United States v. Perez*, 526 F.3d

---

[13] A reduction of 13-17 years from 420 months would equate to a sentence of 216 to 264 months, far below the low end of the guideline range, and would impose little if any additional time to the concurrent state sentence of 20 years.

16

1135, 1138 (8th Cir. 2008). To obtain an evidentiary hearing, a defendant must make a substantial threshold showing that the government's refusal to make a substantial assistance motion was premised on an improper motive. *Id*. "This threshold showing requires more than the presentation of evidence of substantial assistance and general allegations of improper motive because we presume a prosecutor has properly discharged her duties absent clear evidence to the contrary." *Id*. Waller has made no such showing here.

### Evidentiary Hearing

An evidentiary hearing is not warranted when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). An evidentiary hearing need not be held if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or constitute conclusions rather than statements of fact. *Webb v. United States*, 4:08CV1510 CDP, 2009 WL 5220157, at *5 (E.D. Mo. Dec. 31, 2009) (citing *Delgado v. United States,* 162 F.3d 981, 983 (8th Cir.1998)); *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (no hearing required where claim is inadequate on its face or the record affirmatively refutes the factual assertions upon which it is based). Because the

17

record conclusively shows that Waller is not entitled to relief, no hearing is warranted in this case.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner James Clay Waller's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is **DENIED**. ECF No. 25.

**IT IS FURTHER ORDERED** that this Court will not issue a Certificate of Appealability as Petitioner has not made a substantial showing of the denial of a federal constitutional right as required by 28 U.S.C. § 2253(c)(2).

A separate Judgment will accompany this Memorandum and Order.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 27th day of August 2021.